Welch, J.
The case below was an action brought by Lehman against Lowe upon a contract, by which Lehman agreed with Lowe, who “ was about to build a house in the city of Dayton,” to “ furnish and lay up good merchantable brick in the wall, and furnish all materials, of a good and merchantable quality, for six dollars and twenty-five cents per thousand.” It was admitted by the parties that the contract had been fully performed on the part of Lehman, and the only controversy between them was as to the proper method of counting, or estimating, the number of brick furnished and laid up; in other words, as to the legal meaning and effect of the word “ thousand” in the contract. The petition simply sets forth the making of the contract, its fulfillment on the part of the plaintiff, and the amount claimed to be due. The answer denies nothing, except that it claims the amount due to be less, by some $500, than the sum stated in the petition.
The cause was submitted to a jury upon this issue, and the jury found for the plaintiff the sum claimed in the petition.
The defendant moved the court for a new trial, on the ground that the verdict was against the evidence, that it was against the law, and that the court erred in instructing the jury. The motion for a new trial was refused, and judgment was entered upon the verdict. To this the defendant excepted.
Upon the trial the plaintiff introduced evidence tending to prove, that there existed among bricklayers in the city of *181 Dayton, where the parties resided, and where the contract was made, and in its vicinity, a custom, that in contracts of this nature, the number of brick was to be ascertained “ by a mode of measurement,” of the hight and length of the “ outside and inside walls of the building,” made in such a manner as to include the “ walls of the corners and angles ” twice in the outside measurement, and but once in the inside measurement;” “deducting for all openings in the wall, except openings of chimneys and jams (which were to be measured solid); but making no deduction for caps, sills, or lintels;” and allowing and estimating, for every square foot of wall thus obtained, seven brick for a thickness of 4§- inches, fourteen brick for a thickness of 9 inches, and seven additional brick for every additional thickness of 4 inches.
The plaintiff also gave evidence tending to prove the reason and reasonableness of said custom; that similar usages existed among other trades connected with building, in the community; that contractors for brick-work in said city made their bids, and fixed their prices, with reference to said usage; that the prices were regulated accordingly; and that at the prices so fixed, and which were the usual prices, no such work could be done without a loss to the bricklayer, if the bricks were to be actually counted in the wall.
To this testimony, tending to prove the alleged custom, the defendant objected, and-the objection was overruled, and defendant excepted.
The defendant then offered testimony tending to prove that said usage was not generally adopted till 1854, that he was not a brickmason, and that said usage was not reasonable, . uniform, certain, or peaceably acquiesced in by the community.
The testimony being closed, the defendant asked the court to instruct the jury: That if the usage was generally adopted by the brickmasons as late as- 1854, and the defendant was not a member of the trade, or connected therewith, except as a citizen, he must have had actual notice of its existence before he coul'd be bound by it; and that the presumption of *182 such notice might be rebutted, by evidence that he did not, in fact, have knowledge of the custom.
This instruction the court refused, but did instruct the jury: That in the absence of any custom, the words “ a thousand brick” must be taken in the ordinary, sense, and only the actual number laid in the walls must be allowed for, to be ascertained by actual count, or by some method giving the actual number as nearly as possible. But that these words might, by a prevailing usage, acquire a different meaning, and the jury might infer that they were used in that peculiar sense, and give effect to them accordingly. That the usage, in order to have such effect, however, must be shown to have been reasonable, certain, uniform, and generally acquiesced in and understood by the community. That if the usage was ancient, the presumption would be stronger; but although it might have prevailed only since 1854, yet, if it had been so general and universal as to give a peculiar meaning to those words, when used in the contract, in the general understanding of the community, and contracts were made in view of it, the jury might interpret the contract with reference to it, even though it appears that the defendant had no knowledge of such usage. To the refusal to charge as requested, and to the charge as given, the defendant excepted.
The same objections urged by the defendant in the court below (except that involving the right to a new trial, which is merged in the others), are now urged here, as a ground for reversing the judgment. The objections substantially are: 1st, That the court erred in admitting the testimony; and, 2d, That the court erred in its instructions to the jury.
It is true that counsel for defendant in error insist that these questions do not fairly arise upon the record. They say that there is nothing to show that the plaintiff in error was.prejudiced. For aught that appears, the jury may have found their verdict independent of the alleged usage; and for aught that appears, the measurement by the customary mode might have diminished, rather than increased, the number of brick. But we are unable to see the force of this logic. It *183 seems to us clear, that it is enough to show that the court below admitted incompetent testimony, or misdirected the jury, and that the plaintiff in error may have been prejudiced thereby.
1. First, then, did the court err in admitting the proof of the alleged custom ?
The counsel for plaintiff in error contend that the custom should have been.specially pleaded. We think otherwise. It would be impracticable to apply the rule that special customs must be specially pleaded, to cases like the present. No authority for such application of the rule is shown by counsel. Pleadings would be almost endless, if parties were bound to set out in them all the shades and variations in the meaning of terms employed in contracts. The rule seems to be to require each party to come to the trial prepared to meet questions of that kind without special notice.
The counsel also contend that proof of this custom was inadmissible, because it is unreasonable, and because proof of it tends to contradict the contract.
We are unable to see anything unreasonable in the custom. The workman was to furnish the brick and materials, and lay them up, by the thousand. The contract contains no specification of the dimensions, shape, angles, openings, or arches of the wall, or of the size of the brick. It does not require a mason to know that the value of the work and materials depends much upon these, and such like conditions, if they are to be paid for by the numerical thousand. Again : the brick are to be “ furnished,” as well as to be laid up. Where, and how will you count them numerically ? Will you count them at the kiln, on the ground, or in the wall? And who will lose the breakage in transportation, and in handling, and the waste ■ of filling them into the wall ? Some fair measurement of the wall would seem to be a more reasonable method. And we can not say that this method was not a fair one. It slightly increased the estimated number of bricks in the wall, it is true, by making small additions for extra work, and extra waste of brick, at the angles and openings; and "the *184 rule of measurement adopted fixes upon an arbitrary and uniform dimension for the average size of the brick, which may vary slightly, but can not vary much, from their true average size. All this seems to us reasonable.
Neither do we think that proof of this custom is objection able, on the ground that it contradicts the contract. Authorities to support this view are numerous and almost uniform, and the rule is of every day application. It is applied to shingles, to printers’ m’s, to lumber, etc. It is applied to measures and weights of numerous commodities.. .A ton of one article often contains over, and sometimes under, 2000 pounds, and not unfrequently more pounds in one place than in another.. In 2 Parsons on Contracts, the author says that, custom “ may give to words of number an entirely different sense from that which they usually bear.” He cites numerous cases to that effect. Among them are 3 B. & Ad. 728, where “1000 rabbits” was held to mean 1200 rabbits, by the custom ; and Hinton v. Locke, where “ 12 shillings per day ” was made to mean 12 shillings per 10 hours, or 1J days for every day on which 12J hours work was done. But it is useless to multiply authorities. The reason and necessity of the rule lies at the foundation of all language. It is as true now as it was in the time of Horace, that custom is at once the arbiter and standard of language — usus, quem pene et jus et norma loquendi. It belongs to the imperfection of language, that while much the larger part of its words become, by usage, fixed and universal in their meaning, yet some of them must always be left subject to the changes and variations necessarily occasioned by local usages, and the customs of trades.
We are of opinion, therefore, that proof of this custom was properly admitted by the court. We hold that it urns not necessary to set it out in the petition; that it was a reasonable custom; and that it does not contradict or vary the written, contract in any objectionable sense.
2. Did the court err in its charge to the jury ?
The complaint is, that the court refused to charge: that the plaintiff in error was not bound by the custom, unless he *185 had actual knowledge of it, and that the presumption of his knowledge might be rebutted.
Although the court refused to give the charge in this form, it did not charge the direct converse. The court did not say that the defendant must be held bound by the custom, if shown to be ignorant of it; but that the jury might so hold him bound. The charge of the court was, that even if they found that the custom had only been generally adopted for seven years, “ yet that if it had been so general and universal, as to give the peculiar meaning to these words in the general understanding of the community, .... the jury may interpret the contract with reference to it, although the defendant had no knowledge of the usage.” We are not prepared, from anything disclosed in the record, to say that the charge was erroneous. The court left the whole matter to the jury. If they found the defendant in fact ignorant of the custom — and there seems to have been no evidence directly to that effect, or to refute the presumption of his knowledge — the court left it to them to say; whether the custom, though only of recent date, was so general and-universal, and so commonly known and acted upon, as to shut out the right to plead ignorance of its existence. Surely there are such customs — local though they may be. The nature of this custom is fully shown, but the evidence of its generality and universality was left to the jury, and is not set out in the record. We must assume, that the jury found the custom to be such as indicated and required in the charge of the court. If they did, we hold that it is not error for which the plaintiff in error ought to be allowed to reverse the proceeding; that the-jury, under the instruction of the court, held him estopped from denying the knowledge of its existence. If a party stupidly shuts his eyes to what is “universally” known in his community by others, there would be no safety in allowing him to shelter himself under a plea of ignorance.
Judgment affirmed.
Brinkerhobf, C.J., and Scott, and White, JJ., concurred.